UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PEARL ALVARADO *et al.*,

        Plaintiffs,

    v.

TABLE MOUNTAIN RANCHERIA *et al.*,

        Defendants.

No. C 05-0093 MHP

**MEMORANDUM & ORDER**
Re: Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

    Plaintiffs filed this action against the Table Mountain Rancheria, Secretary of the Interior Gale Norton, the United States of America, and various members of the Table Mountain Rancheria Indian Tribe. In their complaint, plaintiffs seek to compel the Table Mountain Rancheria to recognize them as members and to provide them with the full benefits of tribal membership. Plaintiffs also pray for damages arising from the denial of the accrued membership benefits for which they otherwise would have been eligible. Now before the court is defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND[1]

    The instant action arises from a dispute concerning who is entitled to the benefits of membership in the Table Mountain Rancheria, a federally recognized Indian tribe that operates a profitable casino in Fresno County, California. Plaintiffs are thirty-five individuals who claim Native American ancestry and allege that they have been wrongfully denied tribal membership. Defendants include the Table Mountain Rancheria ("the Tribe") and six current and former members of the Table Mountain Tribal Council

(collectively "the tribal defendants"), as well as Secretary of the Interior Gale Norton and the United States (collectively "the government defendants").

In addition, plaintiffs have named as defendants eight individual tribal members (three of whom are now deceased) who served as class representatives in the action <u>Table Mountain Rancheria Association et al. v. James Watt et al.</u>, No. C 80-4595 MHP. The <u>Watt</u> plaintiffs brought suit against the Secretary of the Interior and the United States seeking federal recognition of the Table Mountain Rancheria as an Indian tribal entity and the restoration of "Indian County" status to tribal lands that had been transferred to individual tribal members pursuant to the California Rancheria Act of 1958, P.L. 85-671, 72 Stat. 619 (Aug. 18, 1958), <u>amended by</u> P.L. 88-419, 78 Stat. 390 (Aug. 11, 1964).

On March 25, 1983, the parties to the <u>Watt</u> action agreed to settle the plaintiffs' claims. Pls.' Compl., Exh. 1 ¶¶ 4-5 (hereinafter "<u>Watt</u> Settlement"). The court subsequently issued an order certifying a settlement class comprised of all Indians named in the distribution plan of the assets of the Table Mountain Rancheria and their successors in interest, Pls.' Compl., Exh. 3 at 3, and on June 16, 1983, the court entered a judgment approving the settlement agreement. Pls.' Compl., Exh. 2 (hereinafter "<u>Watt</u> Judgment"). The terms of the stipulated judgment required the Secretary of the Interior to list the Table Mountain Rancheria as a federally recognized tribal entity and to restore Indian County status to certain tribal lands located in Fresno County, California. <u>Watt</u> Settlement ¶¶ 4-5. In addition, the settlement provided that the plaintiff class members owning land within the restored tribal boundaries could elect to reconvey title to the United States to be held in trust for the benefit of the Tribe. <u>Id.</u> ¶¶ 8-9. In return, the <u>Watt</u> plaintiffs agreed to dismiss their claims for money damages against the Secretary of the Interior and the United States. <u>Id.</u> ¶ 13. Finally, the parties agreed that the court would retain jurisdiction to enforce the judgment for a period of one year from its date of entry. <u>Id.</u> ¶ 14.

In December 1983, the Secretary of the Interior published in the Federal Register a notice pursuant to 25 C.F.R. § 83.6(b) designating the Table Mountain Rancheria as a federally recognized "Indian tribal entity" eligible to receive services from the United States Bureau of Indian Affairs ("BIA"). 48 Fed. Reg. 56,862, 56,865 (Dec. 23. 1983). The Tribe subsequently adopted a tribal constitution, which includes

provisions setting forth the criteria for determining tribal membership. These provisions are interpreted and applied by the Table Mountain Tribal Council and General Council, the governing bodies of the Tribe.

Following the settlement of the Watt action and the adoption of the tribal constitution, plaintiffs individually petitioned the Tribal Council for admission to the Tribe. According to plaintiffs, these requests have been repeatedly denied on various and "fluctuating" grounds. Pls.' Compl. ¶ 60. Consequently, on July 11, 2003, four of the plaintiffs in this action filed a complaint in the United States District Court for the Eastern District of California seeking declaratory and injunctive relief against the Secretary of the Interior, the Deputy Commissioner of the BIA, and the Chairman of the National Indian Gaming Commission ("NIGC"). See Lewis v. Norton, No. CIV S-03-1476 LKK/DAD (July 11, 2003). Specifically, the Lewis plaintiffs alleged that the defendants unlawfully failed to order the Table Mountain Rancheria to recognize all qualified individuals as members of the Tribe and sought to enjoin the defendants from providing government funds to the Tribe or permitting it to engage in gaming activities until their applications for tribal membership were approved. See generally Tribal Defs.' Req. for Judicial Notice, Exh. B. Plaintiffs also pleaded a cause of action for violations of the Freedom of the Information Act ("FOIA"). Id. ¶¶ 21-24.

On November 6, 2003, the Lewis court issued an order dismissing the plaintiffs' declaratory and injunctive relief claims for want of subject matter jurisdiction, holding that the dispute concerned "intratribal matters" that the court lacked the power to adjudicate under Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978). Defs.' Req. for Judicial Notice, Exh. C at 9, 17. In addition, the court held that even if Santa Clara Pueblo did not bar the plaintiffs' claims, the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq., does not provide for a private right of action for challenging the nonenforcement of Indian gaming regulations. Id. at 14-16. The court also dismissed plaintiffs' FOIA claim on mootness grounds. Id. at 17-18.

The appeal of the Eastern District's order dismissing the Lewis action is now pending before the Ninth Circuit. Nonetheless, undeterred by the pendency of that appeal, plaintiffs filed the instant action in this court on January 6, 2005. In addition to seeking declaratory and injunctive relief against the Secretary of Interior and the United States, the January 2005 complaint names the Tribe and six of its current and

3

former officers as defendants and seeks an order compelling these defendants to recognize them as members of the Tribe and to provide them with the full benefits of tribal membership. Plaintiffs also allege that the tribal defendants and the class representatives in the Watt action breached their fiduciaries duties by denying them the rights and benefits of tribal membership. In addition, plaintiffs plead a cause of action for breach of the covenant of good faith and fair dealing against all defendants premised upon the duties that the parties to the Watt litigation owe to absent class members. Based on these claims, plaintiffs assert that they are entitled to declaratory and injunctive relief, an accounting for benefits awarded to members of the Tribe from 1983 to the present, compensatory and punitive damages, and attorneys' fees.

On March 28, 2005, defendants moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. Plaintiffs oppose this motion, asserting that jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 1346, and Chapter 7 of Part I of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. The following memorandum and order addresses the issues raised by defendant's motion.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court. See, e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004). The plaintiff bears the burden of establishing the propriety of the court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Consequently, a Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. Savage, 343 F.3d at 1039 n.2; Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. Savage, 343 F.3d at 1039 n.2; Thornhill Publ'g, 594 F.2d at 733. Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.3 (citation omitted).

DISCUSSION

I. Denial of Tribal Membership

The injury that plaintiffs complain of here is the wrongful denial of membership in the Table Mountain Rancheria Indian Tribe. While plaintiffs have pleaded a number of causes of action in their complaint and assert jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346, and the APA, the relief that plaintiffs ultimately seek is predicated on the court's ability to adjudicate disputes regarding their qualifications for tribal membership. As the following discussion will demonstrate, federal courts have cited a myriad of grounds for declining to entertain such actions, including lack of subject matter jurisdiction, sovereign immunity (of both the United States and of federally recognized Indian tribes), and the absence of a cause of action to enforce various rights conferred by federal law. Regardless of the basis for their decision, these courts have been unanimous in holding that the federal judiciary has no authority to determine who should or should not be a member of an Indian tribe.

The starting point for this jurisdictional analysis is the Supreme Court's decision in Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978). Relying on the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301-03, the plaintiffs in Santa Clara Pueblo challenged a tribal enrollment ordinance that conferred membership status to the patrilineal offspring of tribal members but excluded the children of female tribal members who married outside the tribe. 436 U.S. at 52-53 & n.2. The Court held that the plaintiffs' claims against both the tribe and its governor were properly dismissed for want of subject matter jurisdiction. Id. at 58-59, 71. As to the tribe itself, this holding rested on a straightforward application of the doctrine of sovereign immunity. As the Court observed,

> Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. This aspect of tribal sovereignty,

1  like all others, is subject to the superior and plenary control of Congress. But without
2  congressional authorization, the Indian Nations are exempt from suit.

3 Id. at 58 (internal citations and quotation marks omitted). Thus, observing that nothing in ICRA
4 "unequivocally" subjects Indian tribes to the jurisdiction of federal courts in civil actions, the Santa Clara
5 Pueblo Court held that the plaintiffs' claims against the tribe were barred by its sovereign immunity from
6 suit. Id. at 58-59. With respect to the claims against the tribe's governor, the Court conceded that the
7 doctrine of sovereign immunity does not shield tribal officers from the jurisdiction of the federal courts. Id.
8 at 59. Nonetheless, after reviewing the legislative history of ICRA, the Court concluded that there was no
9 "clear indication[] of legislative intent" to create a private cause of action that would permit the plaintiffs to
10 maintain a civil suit under the statute  Id. at 60, 71.

11  While this latter conclusion rested in part on ordinary rules of statutory interpretation, the second
12 prong of the holding in Santa Clara Pueblo was also premised upon considerations of tribal sovereignty.
13 Indeed, the Court observed that "[a] tribe's right to define its own membership for tribal purposes has long
14 been recognized as central to its existence as an independent political community." Id. at 72 n.32 (citing
15 Roff v. Burney, 168 U.S. 218 (1897) and Cherokee Intermarriage Cases, 203 U.S. 76 (1906)). Thus, in
16 light of "the vast gulf between tribal traditions and those with which federal courts are more intimately
17 familiar," the Court cautioned that "the judiciary should not rush to create causes of action that would
18 intrude on these delicate matters." Id.  Heeding this advice, the lower federal courts have consistently
19 recognized that an Indian tribe has the power to determine its own membership unless that authority is
20 expressly limited by treaty or by federal statute. Adams v. Morton, 581 F.2d 1314, 1320 (9th Cir. 1978),
21 cert. denied, 440 U.S. 958 (1979); see also Ordinance 59 Ass'n v. United States Dep't of Interior
22 Secretary, 163 F.3d 1150, 1160 (10th Cir. 1998) ("[T]ribes, not the federal government, retain authority
23 to determine tribal membership."); cf. Donovan v. Coeur d'Alene Tribal Farm, 751 F.2d 1113, 1116 (9th
24 Cir. 1985) (observing that federal courts presumptively lack jurisdiction to adjudicate "purely intramural
25 matters such as conditions of tribal membership, inheritance rules, and domestic relations").

26  The sole statutory authority under which plaintiffs could possibly establish such a waiver of
27 sovereign immunity in the instant action is the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701
28

et seq., which establishes federal oversight over so-called "Class II" and "Class III" gaming activity on Indian lands. See id. § 2710.[2] Attempts to establish federal jurisdiction over tribal membership disputes by tying those disputes to congressional efforts to regulate tribal gaming have routinely rejected by the courts. For example, in Smith v. Babbitt, 100 F.3d 556 (8th Cir. 1996), cert. denied, 522 U.S. 807 (1997), the plaintiffs alleged that their exclusion from the Shakopee Mdewakanton Sioux Community violated a number of federal statutes, including IGRA. Id. at 557. The Eighth Circuit rejected this argument, observing:

> *This is an internal tribal membership dispute.* It is not a dispute over compliance with IGRA, and does not belong in federal court. Congress did not define 'member' when it enacted IGRA, nor would federally imposed criteria be consonant with federal Indian policy. The great weight of authority holds that tribes have exclusive authority to determine membership issues. A sovereign tribe's ability to determine its own membership lies at the very core of tribal self-determination; indeed, there is perhaps no greater intrusion upon tribal sovereignty than for a federal court to interfere with a sovereign tribe's membership determinations.

Id. at 559 (emphasis in original) (citation omitted). A number of district courts have reached similar conclusions, holding that nothing in IGRA confers jurisdiction upon a district court "to hear what is essentially a membership dispute between [the] plaintiffs and the Tribe." Lincoln v. Saginaw Chippewa Indian Tribe of Mich., 967 F. Supp. 966, 967 (E.D. Mich. 1997), aff'd, 156 F.3d 1230 (6th Cir. 1998); see also Montgomery v. Flandreau Santee Sioux Tribe, 905 F. Supp. 740, 746 (D.S.D. 1995) (holding that the district court lacked subject matter jurisdiction to determine whether an Indian tribe's officials violated tribal law by denying membership to certain individuals who claimed entitlement to receive per capita shares of tribal gaming revenues); Davids v. Coyhis, 869 F. Supp. 1401, 1412 (E.D. Wis. 1994) (holding that IGRA does not authorize civil actions by private parties against Indian tribes or their officers); cf. Hein v. Capitan Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1260 (9th Cir. 2000) (holding that members of an Indian group could not maintain an action under IGRA to recover gaming revenues from another Indian group).

Such cases make clear that this court has no jurisdiction to determine whether the Table Mountain Rancheria or its officers acted wrongfully in denying plaintiffs' membership applications. Furthermore, while plaintiffs also seek injunctive and declaratory relief and damages based on some unspecified unlawful conduct committed by the government defendants, the relief sought appears to be

1    premised upon the fact that the Secretary of the Interior breached a duty owed to plaintiffs by failing to
2    order the Tribe to admit them as members. In this respect, the instant action closely resembles Ordinance
3    59 Association, 163 F.3d at 1150. In that action, the plaintiffs, alleging violations of ICRA, sought an
4    sought an order compelling the Secretary of the Interior to enroll them as members in a federally recognized
5    tribe. Id. at 1153. The Tenth Circuit upheld the district court's order dismissing the plaintiffs' complaint for
6    lack of subject matter jurisdiction, observing that "[a] federal court order compelling the Secretary to
7    comply with the requests of the [plaintiffs] would not have the effect of enrolling [them] in the tribe because
8    tribes, not the federal government, retain authority to determine tribal membership." Id. at 1160.

9    Plaintiffs suggest that these authorities are distinguishable from the instant action because the Table
10   Mountain Rancheria has not established a tribal court in which the denial of their membership applications
11   could be adjudicated. However, in Santa Clara Pueblo, the Supreme Court explicitly recognized that
12   "[n]onjudicial tribal institutions"such as tribal councils are "competent law-applying bodies." 436 U.S. at
13   66 (citing United States v. Mazurie, 419 U.S. 544 (1975)). The Table Mountain Rancheria's tribal
14   constitution establishes both a Tribal Council and a General Council and provides that membership
15   decisions are appealable within the tribe. Tribal Defs.' Req. for Judicial Notice, Exh. C at 12-13; see also
16   Pls.' Compl. ¶¶ 60-61. In the absence of any authority to the contrary—which is completely absent from
17   plaintiffs' opposition to the instant motion—the court is compelled to conclude that Santa Clara Pueblo
18   prohibits it from second-guessing the adequacy of these institutional arrangements.

19   Plaintiffs remaining attempts to distinguish the case at bar from the aforementioned authorities could
20   only charitably be characterized as frivolous and certainly do not warrant comment here. Simply put,
21   plaintiffs have failed to cite any federal statute or treaty that would deprive the Tribe of its sovereign power
22   to establish its own membership criteria. See Smith, 100 F.3d at 559. In the absence of such authority, the
23   government defendants cannot force the Tribe or its officers to admit any particular individual as a member,
24   and the district courts have no jurisdiction to order them to do so.

25   In reaching this conclusion, the court merely echoes the well-reasoned order that Judge Carlton
26   issued in dismissing the Lewis action. See generally Tribal Defs.' Req. for Judicial Notice, Exh C.
27   Nonetheless, plaintiffs argue that unlike the Lewis court, this court has authority to entertain their claims by
28

8

1  virtue of its continuing jurisdiction to enforce the stipulated judgment entered in the Watt action.  However,
2  the Watt Settlement neither purports to establish criteria for tribal membership nor provides for judicial
3  enforcement of its provisions after June 16, 1984.[3]  Moreover, "it is well-established that litigants cannot
4  confer [subject matter] jurisdiction by consent where none exists." United States v. Judge, 944 F.2d 523,
5  525 (9th Cir. 1991) (citing Insurance Corp. of Ireland v. Compagnie des Bauxites, 456 U.S. 694, 701-02
6  (1982)), cert. denied, 504 U.S. 927 (1992), and cert. denied, 506 U.S. 833 (1992).  Thus, even assuming
7  the court would have continuing jurisdiction to enforce the Watt Judgment—an assumption that is belied by
8  the plain meaning of the settlement agreement reached by the parties to that action—the relief that plaintiffs
9  now seek is neither provided for in that agreement nor within the court's power to grant.[4]

In summary, the court holds that neither an act of Congress nor the stipulated judgment in the Watt action provides any basis for its exercise of jurisdiction over tribal membership determinations.  The court therefore holds that the claims against both the tribal defendants and the Watt plaintiffs must be dismissed for want of subject matter jurisdiction.  Furthermore, to the extent that plaintiffs' claims against the government defendants are premised upon the provisions of the Watt Settlement, those claims must also be dismissed for lack of subject matter jurisdiction.

II.   Administrative Procedure Act

Having held that neither IGRA nor the Watt Settlement establishes this court's jurisdiction to entertain plaintiffs' claims, the sole remaining issue is whether plaintiffs can maintain a claim for declaratory and injunctive relief under the APA.  Strictly speaking, the APA does not provide district courts with jurisdiction to entertain actions for judicial review; rather, it establishes a cause of action for declaratory or injunctive relief that can be maintained by any person injured by a federal "agency action" and thus gives rise to federal question jurisdiction under 28 U.S.C. § 1331.  See Idaho Watersheds Proj. v. Hahn, 307 F.3d 815, 830 (9th Cir. 2002).  In addition to granting district courts the power to set aside unlawful determinations of federal agencies, the APA provides that the reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

The question here is whether 5 U.S.C. § 706(1) permits this court to review the Secretary of the Interior's failure to act upon a petition to admit plaintiffs as members of the Table Mountain Rancheria, or

9

alternatively, to compel the Tribe to share gaming revenues or otherwise compensate plaintiffs' for their exclusion from the Tribe. In <u>Hein</u>, the Ninth Circuit held that the APA permitted members of a "splinter group" of Indians claiming entitlement to share of tribal gaming members to bring such an "action forcing" suit, observing that the group "is, at the least, entitled to a definitive statement making clear which federal agency, if any, has jurisdiction to hear the claims it asserts, and then, assuming jurisdiction exists, an ultimate resolution of those claims." 201 F.3d at 1261. However, unlike the plaintiffs in <u>Hein</u>, plaintiffs in the instant action have failed to allege that they have ever presented their claims for relief to the Department of the Interior or, for the matter, to any federal agency whatsoever. <u>Cf. id.</u> at 1260 n.6, 1261 (noting that the defendants could raise the issue of failure to exhaust administrative remedies on remand). In the absence of such allegations, plaintiffs cannot maintain a cause of action under the APA. <u>See</u> <u>Native Ecosystems Council v. Dombeck</u>, 304 F.3d 886, 899 (9th Cir. 2002) (citing 5 U.S.C. § 704) (observing that exhaustion of remedies under the APA requires "that an issue be raised to the agency first"). Thus, plaintiffs complaint as it now stands fails to state a claim under the APA.

That being the case, the court must consider whether leave to amend should be granted under Federal Rule of Civil Procedure 15(a). There is some chance (albeit in all likelihood a slim one) that plaintiffs can state a claim for relief under the APA. However, to the extent that an amended complaint might seek to rely upon the theory that plaintiffs have to date advanced in this action—namely, that the Secretary of Interior has a duty to order the Table Mountain Rancheria to admit them as members—plaintiffs must identify a statutory basis for the Secretary's authority to impinge upon the Tribe's sovereignty in such a manner. Thus far, plaintiffs have failed to cite any statute that would permit the Secretary (or any other federal officer) to do so. Nonetheless, in light of the liberal rules governing the amendment of pleadings, <u>see</u> <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003), the court concludes that plaintiffs' APA claims against the Secretary of Interior must be dismissed without prejudice and that leave to file an amended complaint must be granted with respect to those claims.[5]

CONCLUSION

10

1   For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is
2   GRANTED IN PART and DENIED IN PART.  Plaintiffs claims against the tribal defendants, the Watt
3   plaintiffs, and the United States are DISMISSED WITH PREJUDICE.
4   To the extent that defendants' motion to dismiss for lack of jurisdiction is denied, plaintiffs' remaining claims
5   are DISMISSED WITHOUT PREJUDICE.  Plaintiffs may amend their claims **within thirty (30) days** of
6   the date of this order against the Secretary of the Interior for the purpose of satisfying the requirements of 5
7   U.S.C. § 704.  Failure to amend or otherwise respond within thirty days will result in dismissal of the entire
8   action.

10   IT IS SO ORDERED.

12   Dated: July 27, 2005

    MARILYN HALL PATEL
    District Judge
    United States District Court
    Northern District of California

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**ENDNOTES**

1. Unless otherwise noted, the facts set forth below are drawn from the allegations in plaintiffs' complaint.

2. Examples of Class II gaming include bingo and certain card games. 25 U.S.C. § 2703(7). Common examples of Class III gaming are games of chance such as baccarat and blackjack and slot machines. Id. §§ 2703(7)(B), 2703(8).

3. The Watt Settlement provides that the duration of the court's jurisdiction to enforce its provisions could have been extended beyond June 16, 1984 "for such longer time as may be shown necessary on a motion duly noticed by any party within one year from entry of judgment." Watt Settlement ¶ 14. While plaintiffs claim that they should not be bound by the settlement agreement's one-year limitations period because they failed to receive timely notice of the settlement, this argument overlooks the fact that plaintiffs are not parties to the judgment and thus, under the terms of the settlement agreement, they had no right to file a motion to extend the court's supervisory jurisdiction.

4. The nonjusticiablity of plaintiffs' claims arising from the Watt action must be distinguished from the court's ongoing authority to entertain collateral attacks on that judgment based on the inadequacy of the representation provided by the named plaintiffs and their counsel. See, e.g., Epstein v. MCA, Inc., 179 F.3d 641, 648-49 (9th Cir.), cert. denied, 528 U.S. 1004 (1999); Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir. 1992), cert. granted in part, 510 U.S. 810 (1993), and cert. dismissed, 511 U.S. 117 (1994). However, because plaintiffs have not elected to plead their case on this theory—and one suspects that their chances of prevailing on such a claim would be slim—the court need not address the adequacy of representation issue for the purpose of adjudicating the instant motion.

5. In contrast, because claims under the APA must be filed against a federal "agency" within the meaning of 5 U.S.C. § 551(1), all claims against the United States are dismissed for lack of subject matter jurisdiction.